**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TEXAS LOW INCOME HOUSING INFORMATION SERVICE,<br><br>             Plaintiff,<br><br>      v.<br><br>BEN CARSON, Secretary of Housing and Urban Development, in his official capacity, and U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br><br>            Defendants. | Civil Action No. 1:18-CV-00644 (TJK) |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

PAGE(S)

INTRODUCTION……………………………………………………………………… 1

ARGUMENT……………........………………………………………………………... 2

I.     THIS COURT LACKS JURISDICTION BECAUSE TLIHIS DOES NOT HAVE STANDING...……………………………….................................. 2

     A.    TLIHIS Fails to Demonstrate the Requisite Injury……………..………....... 2

     B.    TLIHIS Fails to Establish that Its Alleged Injury is Fairly Traceable to HUD…………………………………………………...………........ 7

     C.    TLIHIS Fails to Demonstrate that Its Alleged Injury is Redressable……….. 8

II.    TLIHIS'S CLAIMS THAT HUD HAS FAILED TO RESPOND TO ITS COMPLAINTS ARE MOOT…………………………………...……………... 9

III.   TLIHIS CANNOT MAINTAIN THE SUIT UNDER THE APA...……….…... 12

     A.    TLHIS Fails to Overcome the Presumption of Unreviewability Under Heckler v. Chaney………………………….………………….…...... 12

          1.  Neither Title VI Nor the FHA Set Forth a Standard Confining HUD's Discretion to Exercise its Enforcement Powers……………. 13

          2.  HUD Has Not Adopted a Policy Amounting to an Abdication of Its Enforcement Authority……………..…………………………... 17

          3.  Plaintiff  Has Not Identified Discrete Actions HUD is Required to Take Separate and Apart from its Enforcement Role…………... 20

     B.    TLHIS's Claims Are Barred Because It Has an Adequate Remedy in a Court…………………………………………………………………..…... 21

     C.    TLHIS Cannot Obtain Broad, Programmatic Relief Under the APA …………………………………………………………………..…... 24

CONCLUSION…………………………………………………………………… 25

## TABLE OF AUTHORITIES

### Cases

*Action All. of Senior Citizens v. Heckler*,
  789 F.2d 931 (D.C. Cir. 1986) ...................................................................5
*Adams v. Richardson*,
  480 F.2d 1159 (D.C. Cir. 1973) ...........................................................17, 19
*Allen v. Wright*,
  468 U.S. 737 (1984) ..................................................................................8
*Am. Disabled for Attendant Programs Today v. HUD*,
  ("*ADAPT*"), 170 F.3d 381 (3d Cir. 1999) ......................................... passim
*Anderson v. City of Alpharetta*,
  737 F.2d 1530 (11th Cir. 1984)..........................................................15, 20
*Cannon v. Univ. of Chicago*,
  441 U.S. 677 (1979)................................................................................22
*Clients' Council v. Pierce*,
  711 F.2d 1406 (8th Cir. 1983) ..................................................................16
*Cook v. Food & Drug Admin.*,
  733 F.3d 1 (D.C. Cir. 2013) .....................................................................14
*Cty. of Westchester v. U.S. Dep't of Hous. & Urban Dev.*,
  778 F.3d 412 (2d Cir. 2015).....................................................................16
*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
  ("*EPIC*"), 878 F.3d 371 (D.C. Cir. 2017) ..................................................4
*Equal Rights Ctr. v. Post Props., Inc.*,
  633 F.3d 1136 (D.C. Cir. 2011) .................................................................7
*Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp.*,
  28 F.3d 1268 (D.C. Cir. 1994) ..................................................................7
*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ..................................................................3
*Fund for Animals, Inc. v. BLM*,
  460 F.3d 13 (D.C. Cir. 2006) ..................................................................19
*Garcia v. Vilsack*,
  563 F.3d 519 (D.C. Cir. 2009) ................................................................22
*Garcia v. McCarthy*,
  No. 13-cv-03939-WHO, 2014 WL 187386 (N.D. Cal. Jan. 16, 2014)................19, 23
*Heckler v. Chaney*,
  470 U.S. 821 (1985) ......................................................................... passim
*HOPE, Inc. v. Cty. of DuPage*,
  738 F.2d 797 (7th Cir. 1984).....................................................................8
*Jaimes v. Toledo Metro. Hous. Auth.*,
  715 F. Supp. 835 (N.D. Ohio 1989)..........................................................15
*Jersey Heights Neighborhood Ass'n v. Glendening*,
  174 F.3d 180 (4th Cir. 1999).....................................................................21
*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ......................................................................6

*Lemon v. Geren,*
   514 F.3d 1312 (D.C. Cir. 2008) ...................................................................9
*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ....................................................................................8
*Marinoff v. HUD,*
   78 F.3d 64 (2d Cir. 1996) ...........................................................................21
*N.A.A.C.P. v. Sec'y of Hous. & Urban Dev.,*
   817 F.2d 149 (1st Cir. 1987) ............................................................. passim
*Nat'l Ass'n of Home Builders v. EPA,*
   667 F.3d 6 (D.C. Cir. 2011) ......................................................................4, 6
*Nat'l Fair Hous. All. v. Carson,* ("*NFHA*")
   No. 18-1076 (BAH), 2018 U.S. Dist. LEXIS 139679 (D.D.C. Aug. 17, 2018) ...............4, 5, 6, 7
*Nat'l Taxpayers Union, Inc. v. United States,*
   68 F.3d 1428 (D.C. Cir. 1995) ..............................................................3, 6, 7
*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.,*
   ("*Nat'l Wrestling*"), 366 F.3d 930 (D.C. Cir. 2004) ...................................8
*New York City Hous. Auth. v. Kemp,*
   No. 89-CV-7183 (PKL), 1989 U.S. Dist. LEXIS 15418 (S.D.N.Y.  Dec. 22, 1989) ............18, 21
*Norton v. S. Utah Wilderness All.,*
   ("*SUWA*"), 542 U.S. 55 (2004) .................................................... passim
*Ohio Fair Congress v. Pierce,*
   639 F. Supp. 215 (N.D. Ohio 1986) .............................................................7
*Open Communities All. v. Carson,*
   286 F. Supp. 3d 148 (D.D.C. 2017) ..........................................................5, 7
*Otero v. N.Y. City Hous. Auth.,*
   484 F.2d 1122 (2d Cir. 1973) .....................................................................15
*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.,*
   ("*PETA*"), 797 F.3d 1087 (D.C. Cir. 2015) ............................................3, 6
*Resident Advisory Bd. v. Rizzo,*
   564 F.2d 126 (3d Cir. 1977) ......................................................................15
*Shannon v. U.S. Dep't of Hous. & Urban Dev.,*
   436 F.2d 809 (3d Cir. 1970) ......................................................................15
*Sugar Cane Growers Coop v. Veneman,*
   289 F.3d 89 (D.C. Cir. 2002) ......................................................................9
*Thompson v. U.S. Dep't of Hous. & Urban Dev.,*
   348 F. Supp. 2d 398 (D. Md. 2005) ......................................................16, 20
*Turlock Irr. Dist. v. FERC,*
   786 F.3d 18 (D.C. Cir. 2015) ......................................................................3
*Warth v. Seldin,*
   422 U.S. 490 (1975) ....................................................................................8
*Wash. Legal Found. v. Alexander,*
   984 F.2d 483 (D.C. Cir. 1993) ........................................................21, 22, 23
*Women's Equity Action League v. Cavazos,*
   ("*WEAL*"), 906 F.2d 742 (D.C. Cir. 1990) ........................................21, 22

Statutes

5 U.S.C. § 701(a)(2) ...................................................................................................12
21 U.S.C. § 381 ..........................................................................................................14
42 U.S.C. § 2000d........................................................................................................12
42 U.S.C. § 2000d-1 ............................................................................................ passim
42 U.S.C. § 3601 ...........................................................................................................1
42 U.S.C. § 3608(e)(5)...........................................................................................14, 16
42 U.S.C. § 3610 .........................................................................................................11
42 U.S.C. § 3610(a)(1)(B)(iv) ....................................................................................11
42 U.S.C. § 3610(a)(1)(c) ...........................................................................................11
43 U.S.C. § 1782(c) .....................................................................................................15

Regulations

24 C.F.R. § 1.7(b) .........................................................................................................6
24 C.F.R. § 1.7(c) ........................................................................................................12
24 C.F.R. § 1.7(d)(2) ...................................................................................................11
24 C.F.R. § 1.8(a) ..........................................................................................................9
24 C.F.R. § 103.225 ....................................................................................................11

## INTRODUCTION

Plaintiff Texas Low Income Housing Information Service ("TLIHIS") fails to present any valid reason for this Court to superintend the Department of Housing and Urban Development's ("HUD's") enforcement activities.  First, TLIHIS lacks standing because it cannot demonstrate that HUD's alleged failure to take more onerous enforcement actions against Houston has perceptibly impaired Plaintiff's ability to provide services.  Instead, Plaintiff's allegations of harm boil down to assertions about its self-imposed budgetary choices to concentrate its advocacy activities on Houston – claims that are insufficient to establish organizational standing.  Moreover, even if TLIHIS could demonstrate injury, it fails to meet the other two requirements of standing – traceability and redressability – because any harm is traceable to alleged discrimination by Houston, not HUD, and it is purely speculative whether enjoining HUD from providing funds will cause Houston, a third party not before this Court, to change its alleged discriminatory practices.  Second, even if TLIHIS had standing, its claims regarding (1) HUD's response to Houston's alleged actions to hinder affordable housing development in predominately white neighborhoods and (2) HUD's alleged failure to timely act on TLIHIS's October 31, 2017 administrative complaint are moot.

Even if the Court has jurisdiction, TLIHIS cannot maintain the suit under the Administrative Procedure Act ("APA") for several reasons.  First and foremost, Plaintiff's attempt to second-guess HUD's enforcement discretion is foreclosed under *Heckler v. Chaney,* 470 U.S. 821, 832 (1985). In its opposition, TLIHIS has presented no viable argument to the contrary.  TLIHIS fails to point to any language in either Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d-1 *et seq*., or the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq*., which constrains HUD's enforcement discretion. Moreover, contrary to TLIHIS's assertion, this is not a case in which HUD has adopted a policy amounting to a total abdication of its enforcement authority.  On the contrary, Plaintiff seeks to halt HUD's ongoing enforcement activities mid-stream, asking this Court to order Plaintiff's preferred

outcome by judicial fiat without regard to the enforcement process spelled out in statute. Second, TLIHIS has another adequate remedy, namely, it can bring its claims directly against Houston. Third, TLIHIS fails to identify a discrete action that it claims has been improperly withheld or is arbitrary or capricious or contrary to law. Instead, Plaintiff challenges what it describes as HUD's "prolonged, programmatic failure . . . to enforce civil rights obligations against the City of Houston," Compl. ¶ 1, ECF No. 1, which is not actionable under the APA.

This Court should, therefore, dismiss the complaint for lack of jurisdiction, or, in the alternative, for failure to state a claim.

## ARGUMENT

### I.   THIS COURT LACKS JURISDICTION BECAUSE TLIHIS DOES NOT HAVE STANDING

As explained in Defendants' initial brief, TLIHIS fails to meet any of the three requirements for standing. Mem. in Support of Mot. to Dismiss ("Defs.' Mem.") at 17-28, ECF No. 13. TLIHIS's allegations fail to demonstrate that its ability to provide services has been perceptibly impaired as required to establish a concrete injury. *Id.* at 17-23. Furthermore, even if TLIHIS could demonstrate injury, it still cannot establish standing because its asserted harm is not traceable to HUD but to alleged discrimination by Houston. *Id.* at 23-24. For similar reasons, TLIHIS cannot demonstrate that the primary relief it seeks – enjoining HUD from providing funds to Houston for affordable housing, community development, and disaster recovery activities – will redress the alleged discriminatory acts by Houston. *Id.* at 24-28. The arguments made by TLIHIS in its opposition do not refute these points.

#### A.  TLIHIS Fails to Demonstrate the Requisite Injury

To establish organizational standing, TLIHIS must plausibly allege (1) a concrete and particularized impairment to its activities or operation and (2) that it used its resources to counteract

that harm.  *Food & Water Watch, Inc. v. Vilsack,* 808 F.3d 905, 919-21 (D.C. Cir. 2015); *Turlock Irr. Dist. v. FERC,* 786 F.3d 18, 24 (D.C. Cir. 2015).  To meet the first prong, "an organization must allege that the defendant's conduct perceptibly impaired the organization's ability to provide services." *Turlock Irr. Dist.,* 786 F.3d at 24.  To meet the second prong, a plaintiff must show that it expended "operational costs beyond those normally expended" to counter the harm caused by defendant's action.  *Nat'l Taxpayers Union, Inc. v. United States,* 68 F.3d 1428, 1434 (D.C. Cir. 1995).  TLIHIS fails to meet either of these requirements.

TLIHIS has not plausibly alleged that its ability to provide services has been perceptibly impaired by HUD's conduct.  Defs.' Mem. at 20-21.  In order to do so, the organization must show that "the defendant's conduct causes an 'inhibition of the organization's daily operations.'" *Food & Water Watch,* 808 F.3d at 919 (quoting *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric. ("PETA"),* 797 F.3d 1087, 1094 (D.C. Cir. 2015)).  In its complaint, TLIHIS asserts that it is "a state-wide advocacy group" that carries out its mission of "promoting safe, affordable housing in quality neighborhoods for families of color in Houston and throughout the State of Texas" by "researching and evaluating low-income housing and community development programs, needs, and issues throughout Texas to discover solutions; promoting public understanding of and support for the same; and organizing and empowering low-income people and communities to take the initiative to solve their own housing and community development problems."  Compl. ¶ 32, 118-19, ECF No. 1.

Nowhere in its complaint or its opposition does TLIHIS explain how HUD's alleged failure to take more punitive actions against Houston for its alleged noncompliance with Title VI and the Fair Housing Act ("FHA") impedes TLIHIS's ability to engage in such advocacy activities.  Instead, TLIHIS asserts that that its work also includes "research, policy analysis, [and] engaging in neighborhood-level planning efforts to improve housing and infrastructure for low-income

3

communities." Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss ("Pls. Opp.") at 16, ECF No. 16. Such activities, however, are simply part and parcel of its advocacy. Indeed, TLIHIS has described itself as "the principal statewide advocacy group focused on expanding housing opportunities for low income residents in Texas." Compl. ¶ 32.[1] Moreover, even if such activities could be viewed as something different in nature from advocacy, TLIHIS has not demonstrated how HUD's alleged failure to take more punitive enforcement actions has impeded its ability to conduct research, policy analysis or public education.

TLIHIS lacks standing here just as it did in *National Fair Housing Alliance v. Carson* *("NFHA"),* No. 18-1076 (BAH), 2018 U.S. Dist. LEXIS 139679, * 48-76 (D.D.C. Aug. 17, 2018). In that case, TLIHIS and other housing advocacy organizations challenged HUD's withdrawal of an Assessment Tool intended to help local government agencies improve planning to affirmatively further fair housing. The court found that plaintiffs failed to meet the requirement for organizational standing because they had failed to show (1) how HUD's challenged action "'perceptibly impaired a non-abstract interest' of the plaintiffs," and (2) that HUD's action forced plaintiffs to use their "resources to counteract that harm." *Id.* at *57-58 (quoting *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011), and *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity ("EPIC")*, 878 F.3d 371, 378 (D.C. Cir. 2017)). The court concluded that plaintiffs had failed to show that their mission-oriented activities had been perceptibly impaired by the agency's action, because plaintiffs continued to engage in the same "daily operations" both before and after the challenged action. 2018 U.S. Dist. LEXIS 139679, *69. For instance, TLIHIS

---

[1] *See also id.* ¶ 15 ("Plaintiff has, over the past decade, devoted substantial resources to engaging in advocacy with Houston and requesting HUD's help in achieving integrated housing in Houston."); ¶ 125 (Plaintiff "advocates for programs to expand the supply of rental housing that low-income households can afford outside of racially segregated and resource poor areas"); ¶ 122 ("Its other advocacy resulted in a 2010 Conciliation Agreement with the State of Texas . . .").

and the other plaintiffs failed to show that the challenged agency action prevented them from being able to file complaints with HUD or to "continue to educate the public" or conduct research.  *Id.* at *69-70.  So too here, TLIHIS fails to show that any of HUD's enforcement decisions perceptibly impaired its activities because TLIHIS provides the same research, public education, and other services regardless of HUD's enforcement decisions.  *See* Pl. Opp. at 14-15.  As in *NFHA*, TLIHIS fails to show that any action or inaction by HUD directly conflicts with or perceptibly impairs more than its mere abstract social interests.

Contrary to TLIHIS's allegations, this case is not analogous to *Open Communities Alliance v. Carson,* 286 F. Supp. 3d 148 (D.D.C. 2017).  In that case, the organizational plaintiff worked to "improve housing mobility programs for voucher users and to increase the supply of rental housing suitable for voucher holders in high-opportunity neighborhoods."  *Id.* at 178.  The organization challenged HUD's delay in implementing a rule requiring local public housing authorities in 24 metropolitan areas to calculate housing vouchers' values based on local, rather than metropolitan-wide prevailing market rents.  The court concluded that the delay of the HUD rule impeded the organization's ability to provide *direct service* to voucher holders – assistance in gaining access to housing – as the organization could not as successfully engage developers to acquire and construct affordable housing under existing voucher values.  *Id.*  Thus, unlike TLIHIS, the Open Communities Alliance was able to show that the delay in the implementation of the regulation directly impeded its daily activities.

The other cases relied on by Plaintiff also do not demonstrate Plaintiff's standing here.  In *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931 (D.C. Cir. 1986), the court found that the organization had standing where the challenged regulations directly denied the organization "access to information and avenues of redress they wish to use in their routine information dispensing, counseling and referral activities."  *Id.* at 937-38.  Unlike the plaintiff organization in

that case and in *PETA,* 797 F.3d at 1094-95, TLIHIS does not allege that it has been denied access to any information, or that HUD imposed any limitation on its ability to seek administrative redress. TLIHIS is free to seek redress though HUD's administrative complaint procedures, as it has done here. *See* 24 C.F.R. § 1.7(b). Accordingly, TLIHIS "ha[s] not established that [its] daily activities were inhibited." *NFHA,* 2018 U.S. Dist. LEXIS 139679, *69-70. In *League of Women Voters of the United States v. Newby,* 838 F.3d 1 (D.C. Cir. 2016), on which Plaintiff relies, voting-rights organizations challenged the Election Assistance Commission's decision to modify instructions on a voter registration form. The organizations sought to register voters, and the new forms – which the organizations were required to use – directly interfered with their ability to successfully register voters by, for example, requiring them to obtain additional documentation from new voters. *Id.* at 8. Here, by contrast, TLIHIS points to no additional requirement that HUD has imposed on them.

In short, no matter how TLIHIS tries to reframe its purported injury, it fails to demonstrate that its activities have been perceptibly impaired by HUD's alleged failure to take what TLIHIS believes would be sufficient enforcement action against Houston.

Even if TLIHIS could demonstrate the necessary impairment to its activities, TLIHIS fails to satisfy the second prong for organizational standing – a showing that it has had to divert resources to counteract the alleged inaction by HUD in the form of expending "'operational costs beyond those normally expended' to carry out its advocacy mission." *Nat'l Ass'n of Home Builders v. EPA,* 667 F.3d at 12 (quoting *Nat'l Taxpayers Union,* 68 F.3d at 1434). Here, TLIHIS does not allege that HUD's alleged failure to take sufficient enforcement measures against Houston "required that [it] spend more on operational costs." *NFHA,* 2018 U.S. Dist. LEXIS 139679, at * 72. Instead, it simply alleges that it curtailed its activities elsewhere in Texas in order to focus on Houston. Pls.' Opp. at 20-22. But, as courts have recognized, "any shift in [TLIHIS's] focus simply does not amount to the expenditure of 'operational costs beyond those normally expended.'" *NFHA,* 2018

U.S. Dist. LEXIS 139679, * 74 (quoting *Nat'l Taxpayers Union,* 68 F.3d at 1434).  TLIHIS "cannot claim to have been injured by this reallocation of funds 'simply because [it] chose to spend [its] money' on some programs rather than on others." *Id.* at *75 (quoting *Equal Rights Ctr. v. Post Props., Inc.,* 633 F.3d 1136, 1129 (D.C. Cir. 2011).  Plaintiff's recounting of its own budgetary decisions—a "purely self-referential injury," *Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp,* 28 F.3d 1268, 1277 (D.C. Cir. 1994) — does nothing to support standing unless those expenditures respond to interference with the organization's programs and services. *See also, e.g.*, *Equal Rights Ctr.*, 633 F.3d at 1139 (describing the "important limitation[s]" on what expenditures can suffice to sustain a cognizable injury).

TLIHIS has not the demonstrated the requisite injury for organizational standing.

## B.  TLIHIS Fails to Establish that Its Alleged Injury Is Fairly Traceable to HUD

Even if TLIHIS had alleged the requisite injury, its injury is not fairly traceable to HUD. TLIHIS's claims centers on the alleged discriminatory acts by Houston, but TLIHIS is not alleging that Houston's discriminatory actions are due to directives from HUD. *See* Compl. ¶¶ 6, 11.  Instead, TLIHIS alleges that HUD has not taken sufficient enforcement actions to remedy Houston's alleged violations of the FHA and Title VI.  Such claims are insufficient to meet the traceability requirement for standing. *See, e.g., Ohio Fair Cong. v. Pierce,* 639 F. Supp. 215, 219 (N.D. Ohio 1986) (dismissing suit asserting that HUD had failed properly to enforce fair housing laws on the grounds that plaintiff's injury "has been caused by unlawful racial practices of unnamed non-parties").[2]

TLIHIS's reliance on *Open Communities Alliance*, 286 F. Supp. 3d at 178, to show that its injury is traceable to HUD is misplaced.  In that case, the court found that HUD's decision to delay

---

[2] TLIHIS tries to obscure its failure to show that its alleged injury is directly traceable to HUD by suggesting that remedial relief ordered by HUD could remedy the discrimination. Pls.' Opp. at 25.  Even if that were true, that argument goes to whether Plaintiff's injuries are redressable, not whether the injuries are fairly traceable to HUD.

the effective date of a rule directly impeded the organization's ability to provide direct services to voucher holders.  *Id.* at 178.  Thus, unlike here, the injury was fairly traceable to HUD.  TLIHIS presents no compelling reason to depart from the rule in this Circuit that where "a plaintiff's asserted injury arises from the Government's regulation of a third party that is not before the court, it becomes 'substantially more difficult' to establish standing." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.* ("*Nat'l Wrestling*"), 366 F.3d 930, 938 (D.C. Cir. 2004) (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 562 (1992) (citing *Allen v. Wright*, 468 U.S. 737, 758 (1984))).  "Because the necessary elements of causation and redressability in such a case hinge on the independent choices of the regulated third party, 'it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury.'" *Nat'l Wrestling,* 366 F.3d at 938 (quoting *Lujan*, 504 U.S. at 562). TLIHIS has failed to meet its burden of showing that any alleged injury is traceable to HUD.

### C.  TLIHIS Fails to Demonstrate that Its Alleged Injury Is Redressable

For similar reasons, TLIHIS also fails to satisfy the redressability prong of standing because its claims are predicated on the assumption that enjoining HUD from disbursing CDBG or other funding will cause Houston to change its alleged discriminatory practices.  Defs.' Mem. at 25-26; Moreover, as the courts found in *Warth v. Seldin,* 422 U.S. 490, 505 (1975), and *HOPE, Inc. v. County of DuPage,* 738 F.2d 797, 806 (7th Cir. 1984) (en banc), the increased availability of low-income and moderate-income housing in non-minority areas depends upon not only actions by HUD and local governments, but also the efforts and willingness of private developers.

In its opposition, TLIHIS makes no attempt to explain how an order enjoining HUD from disbursing funds to Houston would cause Houston to change its alleged discriminatory practices or increase the availability of low-income and moderate-income housing in non-minority areas. Instead, TLIHIS seeks to avoid this basic flaw in its standing argument by alleging that "[a] plaintiff

8

asserting procedural injury never has to prove that if he had received the procedure the substantive result would have been altered." Pls.' Opp. at 26 (quoting *Sugar Cane Growers Coop. v. Veneman,* 289 F.3d 89, 94-95 (D.C. Cir. 2002) (failure to provide notice and comment) and citing *Lemon v. Geren,* 514 F.3d 1312, 1315 (D.C. Cir. 2008) (failure to conduct an environmental impact statement)). This line of cases has no application here because TLIHIS has not asserted a procedural injury nor has HUD even arguably failed to comply with any procedural requirements. Instead, it is TLIHIS who is asking the court to circumvent the procedural requirements for withholding funding to correct alleged discriminatory acts by Houston. Specifically, Houston requests "temporary and permanent injunctions requiring HUD . . . to withhold further . . . funding to Houston until such time as it comes into compliance" with civil rights laws. Compl. at 36, Prayer for Relief, ¶ (b). Withholding funding is, indisputably, a substantive outcome, not a procedural requirement.[3] In short, neither TLIHIS's alleged injury nor the relief sought can be characterized as procedural in nature.

In sum, TLIHIS's complaint should be dismissed for lack of jurisdiction because TLIHIS cannot meet the three elements of standing.

## II.   TLIHIS'S CLAIMS THAT HUD HAS FAILED TO RESPOND TO ITS COMPLAINTS ARE MOOT

Even if TLIHIS could establish standing, this Court lacks jurisdiction over TLIHIS's claims

---

[3] TLIHIS asks the court to order HUD to withhold funding notwithstanding the fact HUD is in the midst of investigating the drainage complaint and pursuing voluntary compliance on the Low Income Housing Tax Credit matter through the voluntary compliance agreement. In other words, through the present action TLIHIS seeks not to require HUD to follow the procedure required by law, but rather to order HUD to abandon the very type of informal means which the statute and regulations require as a predicate to the drastic measure of withholding funding. 42 U.S.C. § 2000d-1 ("no such action [i.e. withholding of funds] shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means"); 24 C.F.R. § 1.8(a).

to the extent that they are predicated on HUD's alleged failure to act on (1) Houston's alleged actions to hinder Low-Income Housing Tax Credits ("LIHTC") funding for the Fountain View Development and other affordable housing developments in predominately white neighborhoods and (2) TLIHIS's October 31, 2017 administrative claim regarding drainage infrastructure.  As Defendants explained in their opening brief, HUD already investigated and entered into a voluntary compliance agreement with Houston to resolve the complaints about Houston's action with respect to Fountain View and the process for issuing resolutions regarding LIHTC developments.  Defs.' Mem. at 27-28.  Moreover, TLIHIS's request for an order compelling HUD to initiate an investigation of TLIHIS' administrative complaint is moot because HUD has initiated such an investigation.  *Id.* at 28-29 & Sweeney Decl. ¶ 12, ECF No. 13-1.

TLIHIS fails to present any valid basis for finding that these claims remain live.  TLIHIS contends that the voluntary compliance agreement ("VCA") does not "resolve" Houston's alleged violation because the VCA did not "put in place any of the forms of relief that HUD, in the January 2017 violations letter, found would be required to remedy those violations such that Houston would remain eligible for federal funding."  Pl.'s Opp. at 29.  However, by its own terms, the VCA expressly resolved all issues in the January 2017 letter.  Sweeney Decl., Ex. F at 1 ("The parties agree that all issues, findings, concerns, and questions in the Letter are fully and finally resolved and superseded by this Agreement.").  The fact that TLIHIS may have preferred that the VCA require Houston to take other remedial actions does not mean that the VCA did not resolve TLIHIS's claim.  Indeed, TLIHIS's contention that HUD was required to adopt specific remedies to resolve that matter is inconsistent with its statement elsewhere in its opposition that TLIHIS' suit "does not ask the Court to substitute its own judgment for *specific* enforcement actions taken" but rather asks HUD simply to do something. Pl.'s Opp. at 35.  Accordingly, although TLIHIS may disagree with the manner in which HUD exercised its enforcement discretion, TLIHIS's disagreement does not

give rise to an active and cognizable case or controversy seeking to require HUD to take a different enforcement action.

Similarly, TLIHIS fails to rebut HUD's contention that the agency has initiated an investigation of TLIHIS's administrative claim about Houston's storm drainage, thus mooting that claim.  TLIHIS's assertion that "the agency has presented no evidence" that it has initiated an investigation (Pls.' Opp. at 29) is simply incorrect.  Defendants submitted the sworn declaration of Garry Sweeney stating that HUD had initiated an investigation of TLIHIS's complaint, and attached to that declaration a copy of the notice of investigation sent to the Mayor of Houston.  Sweeney Decl. ¶ 12 and Ex. G.  TLIHIS tries to rebut the existence of the investigation by asserting that it "received no notification from HUD" when HUD opened the investigation and has not "been contacted by HUD for interviews or document reviews as part of an investigation."  Pls.' Opp. 30 and Henneberger Decl. ¶ 4.  TLIHIS contends that "[u]nder standard procedures HUD notifies both the complainant and the subject recipient when it has opened an investigation."  Pls.' Opp. at 29 (citing 42 U.S.C. §§ 3610(a)(1)(B)(iv) and 3610(a)(1)(C) and 24 C.F.R. § 103.225).  HUD is not required to provide notice to the complainant of the initiation of an investigation into its complaint.  The part 103 regulations and 42 U.S.C. § 3610 (which apply to administrative complaints under the Fair Housing Act) do not apply in this case, nor do they require HUD to notify the complainant of the opening of an investigation.  The Title VI statutes and regulations, which do apply here, do not require HUD to reach out to the complainant upon the initiation of an investigation.  Instead, the regulations provide only that HUD will notify the complainant "if the investigation does not warrant action." 24 C.F.R. § 1.7(d)(2).  In any event, indisputably TLIHIS has received notice through Mr. Sweeney's declaration and the attendant filings in this case.  Accordingly, TLIHIS's attempt to superintend HUD's conduct of the investigation by casting doubt upon the progress of such investigation has no basis and fails to present an active case or controversy over which this Court

would have jurisdiction.[4]

## III.    TLIHIS CANNOT MAINTAIN THIS SUIT UNDER THE APA

### A.  TLIHIS Fails to Overcome the Presumption of Unreviewability under *Heckler v. Chaney*

Even if this Court had jurisdiction over Plaintiff's claims, its claim that HUD failed to take

sufficient enforcement actions against Houston must be dismissed because the APA does not permit

judicial review of agency actions that are "committed to agency discretion by law," 5 U.S.C. §

701(a)(2).  *See* Defs.' Mem. at 30-35.  It is well established that "an agency's decision not to

prosecute or enforce . . . is a decision generally committed to an agency's absolute discretion."

*Chaney,* 470 U.S. at 831.  TLIHIS's claims that HUD has not adequately secured Houston's

compliance with Title VI and the duty to affirmatively further fair housing ("AFFH") fall directly

within this APA limitation on judicial review.  Def. Mem. at 31-35.  As the Third Circuit held in a

closely analogous case, "[r]eview of HUD's decisions whether to bring enforcement actions . . . is

governed squarely by *Chaney.*"  *Am. Disabled for Attendant Programs Today v. HUD* ("*ADAPT*"),

170 F.3d 381, 386 (3d Cir. 1999).

In its opposition, TLIHIS offers three arguments to try to rebut the *Chaney* presumption

against judicial review.  None of Plaintiff's arguments have merit.  First, Plaintiff contends that Title

VI and FHA provide a guideline for the agency to follow in excising its enforcement powers.  Pl's.

Opp. at 36.  Second, TLIHIS argues that *Chaney* does not bar its suit because HUD has allegedly

adopted a policy amounting to an abdication of its statutory responsibilities.  *Id.*  Third, TLIHIS

claims that *Chaney* does not apply because "a statute affirmatively requires" HUD to take action

---

[4]  TLIHIS's argument that HUD was required to initiate an investigation within 100 days is moot and in any event is wrong — there is no specific deadline for responding to a Title VI complaint.  *See* 42 U.S.C. § 2000d; 24 C.F.R. § 1.7(c) ("The responsible Department official or his designee shall make a prompt investigation.").

"separate and apart from its enforcement power under the statute." *Id.*

### 1. Neither Title VI Nor the FHA Set Forth a Standard Confining HUD's Discretion to Exercise its Enforcement Powers

Contrary to TLIHIS' claim, neither Title VI nor FHA sets forth a substantive standard for the agency to follow in exercising its enforcement powers. Defs. Mem. at 31-33. As the Supreme Court explained in *Chaney,* "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise," such as whether "agency resources are best spent on this violation, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and indeed whether the agency has enough resources to undertake action at all." 470 U.S. at 831. To overcome this presumption, a plaintiff bears the burden of showing, by reference to the substantive law at issue, that Congress has constrained the agency's enforcement discretion "by setting substantive priorities, or otherwise circumscribing an agency's power to discriminate among issues or cases it will pursue." *Id.* at 833.

TLIHIS points to nothing in the language of Title VI or the FHA that sets substantive priorities or otherwise circumscribes HUD's discretion in its exercise of its enforcement power. Indeed, TLIHIS cannot do so. The provisions granting the Secretary the authority to terminate or withhold funding under Title VI explicitly grant HUD discretion to determine whether the use of such authority is warranted in a particular situation. Defs. Mem. at 32-33. On its face, Title VI states that "[c]ompliance with any requirement adopted pursuant to this section *may be* effected . . . by the termination of or refusal to grant or to continue assistance under such program or activity." 42 U.S.C. § 2000d-1 (emphasis added). As the Supreme Court found in *Chaney*, such provisions "commit complete discretion to the Secretary to decide how and when they should be exercised." *Chaney,* 470 U.S. at 835 (discussing a Food and Drug Administration enforcement provision which

stated that "the Secretary is authorized" to take certain enforcement actions).   Nowhere in its opposition does TLIHIS attempt to refute this discretionary language in Title VI.

TLIHIS's claim that 42 U.S.C. § 3608(e)(5) requires HUD "to take action against a recipient engaged in practices that are racially discriminatory or otherwise fail to affirmatively further fair housing" (Pl's Opp. at 32) likewise has no merit.   On its face, Section 3608(e)(5) simply states that "[t]he Secretary of Housing and Urban Development shall," *inter alia,* "administer the programs and activities relating to housing and urban development in a manner to affirmatively to further the policies of the policies of this subchapter."   It does not purport to set priorities for enforcement actions or require HUD to take any specific enforcement actions.   Indeed, Plaintiff's argument that Section 3608(e)(5) provides "a substantive standard to apply to constrain HUD's enforcement and investigative decisions" was specifically and forcefully rejected by the Third Circuit.   *ADAPT*, 170 F.3d at 389.   "Under the FHA, Congress explicitly chose to give discretion to HUD when determining whether to prosecute and investigate."   *Id.*   "The 'affirmatively to further' language cannot override the discretionary impact of the explicit language of the statute."   *Id.*   As the court explained, "[t]he numerous ways that HUD can allocate its resources and choose to affirmatively further the policies of the FHA illustrate the fact that the 'affirmatively to further' language does not provide a meaningful substantive standard against which to judge HUD's generalized enforcement activities."   *Id.*[5]

---

[5] The broad language in the FHA is not analogous to the statute at issue in *Cook v. Food and Drug Administration*, 733 F.3d 1 (D.C. Cir. 2013).   The statute at issue there – 21 U.S.C. § 381 – "sets forth precisely when the agency must determine whether a drug offered for import appears to violate the [Food, Drug, and Cosmetic Act], and what the agency must do with such a drug." *Id.* at 7.   The statute "requires FDA to (1) sample 'any drugs' that have been 'manufactured, prepared, propagated, compounded, or processed' in an unregistered establishment and (2) examine the samples and determine whether any 'appears' to violate the prohibitions listed in § 381(a)(1)-(4).   If, 'from the examination of such samples or otherwise,' the FDA finds an apparent violation of the Act, then it must (3) 'refuse[] admission' of the prohibited drug." 733

The Supreme Court's decision in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004) (*"SUWA"*), confirms that statutory provisions such as Section 3608(e)(5) are insufficient to create a legal obligation for an agency to take a particular action.  In that case, the plaintiff contended that the Department of Interior had violated its mandate under 43 U.S.C. § 1782(c) to "continue to manage [wilderness study areas] . . . in a manner so as not to impair the suitability of such areas for preservation as a wildness" by failing to ban off-road vehicles in particular wilderness areas.  *Id.* at 59-60.  The Supreme Court found that although "Section 1782(c) is mandatory as to the objective to be achieved, it leaves [the agency] a great deal of discretion in deciding how to achieve it."  *Id.* at 66. The same is true here.  Although Section 3608(e)(5) sets forth a broad general objective, it leaves HUD with the discretion in deciding how to achieve that objective.  TLIHIS's opposition never addresses *SUWA*, much less offers any explanation why HUD's obligation under 3608(e)(5) is unlike the non-impairment duty at issue in *SUWA*.

The cases cited by TLIHIS to support its contention that Section 3608(e)(5) provides the standard for HUD to follow in exercising its enforcement discretion are not persuasive because they either predate the Supreme Court's decision in *SUWA* (and in some cases even *Chaney*) or  challenge discrete, non-enforcement actions.  For example, *N.A.A.C.P. v. Secretary of Housing and Urban Development,* 817 F.2d 149 (1st Cir. 1987), which held that Section 3808(e)(5) may set a standard for "review[ing] a series of decisions to determine whether, taken together, they violate the obligation to further the goals of Title VIII," was decided seventeen years before *SUWA. See also Jaimes v. Toledo Metro. Hous. Auth.,* 715 F. Supp. 835 (N.D. Ohio 1989); *Anderson v. City of Alpharetta,* 737 F.2d 1530, 1534 (11th Cir. 1984); *Otero v. N.Y. City Hous. Auth.,* 484 F.2d 122 (2d Cir. 1988); *Resident Advisory Bd. v. Rizzo,* 564 F.2d 126 (3d Cir. 1977); *Shannon v. U.S. Dep't of*

---

F.3d at 10.  Because the statute set forth precisely what actions FDA must take, the court found that FDA's failure to do so was reviewable.  *Id.*

*Hous. & Urban Dev.,* 436 F.2d 809 (3d Cir. 1970); *Clients' Council v. Pierce,* 711 F.2d 1406 (8th Cir. 1983).

The only two cases cited by TLIHIS which post-date *SUWA* − *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 348 F. Supp. 2d 398 (D. Md. 2005), and *County of Westchester v. U.S. Dep't of Hous. & Urban Dev.,* 778 F.3d 412 (2d Cir. 2015) − are clearly distinguishable because they did not involve the issue of whether Section 3608(e)(5) provides a standard for reviewing HUD's exercise of its enforcement discretion.  In *Thompson,* the plaintiffs did not challenge to HUD's exercise of its enforcement authority, but rather HUD's determination of policies for the local public housing authority to follow with respect to assignment of tenants in the public housing.  The court found that in prescribing such procedures and requirements, HUD was "acting more like a legislator than a prosecutor."  348 F. Supp. 2d at 422 n.39.  *County of Westchester* is likewise not on point. In that case, a county alleged that HUD had acted in an arbitrary and capricious manner in rejecting the submission the county had made to obtain funds under the HOME program.  778 F.3d at 419. Thus, this simply was not a case in which the plaintiff challenged an agency's decision *not* to take an enforcement action against a third party; quite the opposite, this was a case in which the plaintiff challenged a particular enforcement action taken against that plaintiff.  The *Westchester* case therefore says nothing about whether a plaintiff can overcome the presumption of unreviewability of an agency's discretion not to pursue enforcement action against a third party, nor particularly about whether Congress has established standards under 42 U.S.C. § 3608(e)(5) that constrain HUD's enforcement discretion.  *See Heckler v. Chaney*, 470 U.S. at 832 (distinguishing a challenge to an agency's nonenforcement from a challenge to a particular enforcement action, which may affect the rights of the party subject to the enforcement action).

Accordingly, TLIHIS's attempt to rebut the *Chaney* presumption by suggesting that Title VI and Section 3608(e)(5) set a standard for HUD's discretion to exercise its enforcement authority

16

fails.

### 2. HUD Has Not Adopted a Policy Amounting to an Abdication of its Enforcement Authority

TLIHIS errs in its attempt to avoid *Chaney* by asserting that HUD has abdicated its statutory responsibilities by purportedly taking no meaningful action.  As support for this argument, TLIHIS relies upon *Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973), *N.A.A.C.P.*, 817 F.2d at 159, and other cases which have held that a plaintiff may bring an APA claim where an agency has adopted a policy amounting to a complete abdication of its enforcement authority.  TLIHIS's reliance on those cases is misplaced.

The circumstances in *Adams*, which was decided twelve years before the Supreme Court's decision in *Heckler v. Chaney,* are not comparable.  In that case, the plaintiff alleged that the Department of Health, Education and Welfare ("HEW") had "consciously and expressly adopted a general policy which is in effect an abdication of its statutory duty." *Adams*, 480 F.2d at 1162.  The record in that case indicated that between January 1969 and February 1970, HEW had made administrative determinations finding that several states were operating a racially segregated system of higher education but had failed to resolve any of the cases by voluntary compliance agreements by February 1973. *Id.*  The court held that although Title VI "does not provide a specific time period in which voluntary compliance may be sought, it is clear that a request for voluntary compliance, if not followed by responsive action on the part of the institution, does not relieve the agency of the responsibility to enforce Title VI by one of the two alternative means contemplated by the statute." *Id.* at 1163.  Under those extreme circumstances, the court found that HEW had violated its duty to commence enforcement proceedings.  *Id.*

Although TLIHIS tries to compare this case to *Adams* by asserting that HUD has taken "no action to compel Houston's Title VI compliance in face of clear evidence that Houston has

systematically discriminated in affordable housing and municipal services for many years" (Pl's. Opp. at 36), this assertion is belied by the allegations in its complaint. TLIHIS acknowledges that HUD initiated an investigation of Houston's actions with respect to a proposed affordable housing complex known as Fountain View Apartments and Houston's procedures for issuing resolutions in support of LIHTC developments. Compl. ¶ 88; *see also* Sweeny Decl. ¶ 4. TLIHIS also admits that on March 2, 2018, HUD entered into a VCA outlining four specific actions that have been or will be taken to resolve the matter. Compl. ¶¶ 96-97; *see also* Defs.' Mem. at 12-13; Sweeney Decl. ¶ 11 and Ex. F. Although TLIHIS may prefer different remedial actions, TLIHIS cannot avoid the presumption against judicial review simply by characterizing the settlement as inadequate. *See* Defs.' Mem. at 34-35 (citing cases extending the *Heckler v. Chaney* presumption to decisions to settle enforcement actions and the terms of such settlement).[6] HUD's decision to enter into the VCA, far from being an "abdication of statutory responsibility," represents exactly the type of enforcement action that Title VI encourages agencies to take whenever possible. 42 U.S.C. § 2000d-1. In addition to the VCA, HUD has also taken other actions to facilitate Houston's compliance with its statutory obligations. For example, as TLIHIS acknowledges, HUD required Houston to amend its analysis of impediments to fair housing choice in 2010. Compl. ¶ 49. Furthermore, HUD

---

[6] TLIHIS attempts to bolster its claim that HUD has abdicated its statutory duties by repeatedly pointing to the "findings" made in HUD's 2017 Title VI letter to Houston and suggesting that these "findings" require HUD to withhold CDBG and other funding. Pl's. Opp. at 1, 7, 31, 40. However, the "findings" contained in the Title VI letter are not final and do not authorize, much less require, HUD to withhold funding. As previously explained, HUD's regulations provide that HUD may exercise its authority to suspend or terminate funding only on the basis of an express finding made on the record, after an opportunity for hearing. *See* Defs.' Mem. at 32; *New York City Hous. Auth. v. Kemp*, No. 89-cv-7183 (PKL), 1989 U.S. Dist. LEXIS 15418, *7-9 (S.D.N.Y. Dec. 22, 1989) (enjoining HUD from refusing to issue a grant without the requisite formal finding of a violation). Thus, the findings made in the Title VI letter are simply the preliminary results of HUD's investigation that, like allegations in a complaint, are as yet unadjudicated and merely provide a basis for initiating an administrative enforcement proceeding.

has initiated an investigation into the claims raised by TLIHIS in its October 31, 2017 administrative complaint alleging discriminatory implications of Houston's drainage infrastructure.   Sweeney Decl. ¶ 12.   In short, although TLIHIS attempts to suggest that HUD has done nothing, the record shows otherwise.

As the court recognized in *Garcia v. McCarthy,* No. 13-cv-0339-WHO, 2014 WL 187386, at *32 n.4 (N.D. Cal. Jan. 16, 2014), *Adams* is "factually distinct" from a case "where [an agency] did investigate the complaint, made preliminary findings, and secured a settlement."   In that case, plaintiffs alleged that the Environmental Protection Agency had violated Title VI by settling an administrative complaint alleging that California had subjected Hispanic schoolchildren to harmful pesticides and fumigants.   The court dismissed the case under *Heckler v.* Chaney, finding that the agency's actions were committed to agency discretion by law.   *Id.* at 31. This Court should do the same.

TLIHIS's reliance on *N.A.A.C.P.* is likewise misplaced.   In that case, the court cited a footnote in *Chaney*, in which the Supreme Court left open the possibility that a plaintiff may be able to bring an APA claim where "[a]n agency has 'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory responsibilities."   817 F.2d at 159 (quoting *Chaney,* 470 U.S. at 833 n.4; *Adams*, 480 F.2d at 1162).   Based on that statement, the First Circuit then concluded that the plaintiff could bring an APA action where a plaintiff "asks for review of a series of decisions to determine whether, taken together, they violate the obligation to further the goals of Title VIII."   817 F.2d at 159.   As explained *supra* at 15, the Supreme Court decision in *SUWA* undermines the validity of that First Circuit's holding.   *See also Fund for Animals, Inc. v. BLM*, 460 F.3d 13, 18 (D.C. Cir. 2006) ("The federal courts are not authorized to review agency policy choices in the abstract.").   Moreover, even if the logic of *NAACP* remains viable after *SUWA,* this is simply not a case in which HUD has consciously and expressly abdicated its statutory

responsibilities. *See supra* at 17-19. Rather, Plaintiff seeks to short-circuit the agency's ongoing enforcement actions by inviting this Court to impose Plaintiff's preferred outcome.

TLIHIS's reliance on *Anderson,* 737 F.2d 1530, fares no better. That case also predated *Chaney*, and the court's suggestion that HUD could be liable under the APA for failing to cut off funding in certain circumstances was pure dicta because the court found that HUD was not involved in providing federal financial assistance to the local housing authorities. *Id.* at 1537.

Plaintiff's attempt to avoid *Chaney* on the grounds that HUD has abdicated its enforcement authority has no merit. Even if such an exception to the unreviewability of agency enforcement discretion remains viable, it should not apply here where HUD has investigated – and actively continues to investigate – allegations of Houston's noncompliance.

### 3. Plaintiff Has Not Identified Discrete Actions HUD Is Required to Take Separate and Apart from its Enforcement Role

Finally, TLIHIS cannot avoid the *Chaney* presumption against judicial review by its erroneous assertion that HUD is acting "primarily, not as . . . investigator or 'prosecutor,' but as a collaborator in the production and administration of housing policy" with respect to the challenged actions. Pl's. Opp. at 36 (quoting *Thompson,* 348 F. Supp. 2d at 421-22). This argument is belied by the claims in the Complaint. Indeed, in the opening paragraph of its Complaint, TLIHIS states that "this suit challenges the prolonged, programmatic failure of the U.S. Department of Housing and Urban Development (HUD) to enforce federal civil rights obligations against the City of Houston." Compl. ¶ 1.[7] The withholding of such funds is by its very nature an enforcement action

---

[7] *See also, e.g.,* ¶¶ 14 ("HUD's failure or refusal to enforce Houston's civil rights obligations"); 134 ("HUD has failed for years to require Houston to comply with Title VI and AFFH"). Moreover, the primary relief sought by TLIHIS is an injunction "requiring HUD to enforce Title VI, AFFH, and related obligations against Houston, to withhold further disbursement of Block Grant, CDBG-DR, or other HUD funding to Houston until such time as it comes into compliance with those obligations." *Id.* Prayer of Relief, ¶ (b).

because it must be predicated on a finding that the entity has violated a statutory or regulatory requirement. *See* 42 U.S.C. § 2000d-1 (federal agencies may effect compliance with Title VI requirements "by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after an opportunity for a hearing, of a failure to comply with such requirement."); *New York City Hous. Auth.y v. Kemp,* No. 89-cv-7183 (PKL), 1989 U.S. Dist. LEXIS 15418, *7-9 (S.D.N.Y. Dec. 22, 1989) (enjoining HUD from refusing to issue a grant without the requisite formal finding of a violation pursuant to HUD regulations).

No matter how TLIHIS tries to frame its claim, it cannot avoid the Supreme Court's presumption in *Heckler v. Chaney* that an agency's decisions on how to exercise its enforcement authority is committed to the agency's discretion and not subject to judicial review.

## B.  TLIHIS's Claims Are Barred Because It Has an Adequate Remedy in a Court

TLIHIS's claim is also barred under the APA by Section 704 because TLIHIS has an adequate, and more direct, remedy at law by means of an action against Houston, an action which TLIHIS admits it could pursue. Defs.' Mem. at 35-37; Pl. Opp. at 44 ("there is no dispute that Texas Housers can sue Houston directly"). As previously explained, this Circuit and others have found that a suit directly against an allegedly discriminating non-federal entity provides an adequate alternative remedy to APA review, therefore precluding an APA suit seeking to compel an agency to take enforcement actions. *See Wash. Legal Found. v. Alexander,* 984 F.2d 483, 484-86 (D.C. Cir. 1993); *Women's Equity Action League v. Cavazos ("WEAL"),* 906 F.2d 742, 750-51 (D.C. Cir. 1990); *ADAPT,* 170 F.3d at 390; *Jersey Heights Neighborhood Ass'n v. Glendening,* 174 F.3d 180, 190-92 (4th Cir. 1999); *Marinoff v. HUD,* 78 F.3d 64 (2d Cir. 1996).

Although TLIHIS admits that it could sue Houston directly for its alleged discriminatory acts, TLIHIS nonetheless argues that it does not have an adequate alternative remedy because it

could not obtain relief identical to the relief it seeks against HUD under the APA.  Pls.' Opp. at 44.

TLIHIS contends that any relief ordered against Houston to end its alleged discrimination would

not be adequate in a case like this one challenging HUD's alleged "failure to abide by its independent

[] obligations" to take enforcement actions.  *Id.*  This argument was rejected by the D.C. Circuit in

*WEAL,* 906 F.2d at 750-51, in the context of action under Title IX of the Education Act Amendments

of 1972, which are modeled after Title VI of the Civil Rights Act.  In that case, the plaintiff argued

that individual actions against an alleged discriminator cannot redress the systematic lags and lapses

by the federal agency to enforce Title IX.  *Id.* at 751.  In rejecting this claim, the court pointed to

the Supreme Court's statement in *Cannon v. University of Chicago,* 441 U.S. 677 (1979), that

implied rights of actions against discriminating entities were intended by Congress "to provide

individual citizens effective protection against [discriminating] practices."  *Id.* at 750 (quoting 441

U.S. at 704).  The D.C. Circuit concluded that this statement "suggests that Congress considered

private suits to end discrimination not merely adequate but in fact the proper means for individuals

to enforce Title VI and its sister antidiscrimination statutes."  906 F.2d at 750; *accord Wash. Legal

Found.,* 984 F.2d at 484; *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) ("[T]he alternative

remedy need not provide relief identical to relief under the APA, so long as it offers relief of the

'same genre.'").  Citing *WEAL,* the Third Circuit dismissed a similar APA suit against HUD for its

alleged failure to carry out its investigative and enforcement duties under the FHA.  *ADAPT,* 170

F.3d at 390.

In its opposition, TLIHIS offers no case law to the contrary, but nonetheless suggests that,

regardless of the existence of an adequate alternative remedy, Section 704 does not prevent a

plaintiff from maintaining an APA claim challenging an agency's "longstanding, conscious policy

of non-enforcement."  Pls.' Opp. at 44.  TLIHIS relies entirely upon a single statement in

*Washington Legal Foundation*, in which the court stated that "assuming without deciding that an

*Adams* abdication action [alleging an agency's 'conscious policy of non-enforcement' of Title VI] might still be available under the APA after our decision in *WEAL*, such an action is not available to appellants in this case."  984 F.2d at 487.  This statement cannot bear the weight Plaintiff places on it.  Although TLIHIS correctly observes that the court acknowledged it did not have to decide the issue to resolve the case, the court did so only after expressing doubt that such an action remains viable.  *Id.* at 487 ("As [the agency] points out, in the years since *Adams* was decided, this court has expressly addressed and affirmed the availability of an adequate alternative remedy" against an alleged discriminator.).  Indeed, the court noted that its decision in *Adams* did not address the issue of whether plaintiffs' claim against HEW was barred under Section 704 because *Adams* was decided prior to the Supreme Court's decision in *Cannon,* in which the Supreme Court explicitly endorsed a private right of action under Title VI against discriminating recipients of federal funds.  *Id.* at 487 and n.10.  The D.C. Circuit found that it did not need to reach the Section 704 issue because the circumstances in *Adams,* where an agency "itself ha[s] determined that [recipients] were in violation of Title VI, and had nevertheless taken no action against them," 984 F.2d at 488, were not present in *Washington Legal Foundation.  Id.* at 488.  The same is true here because, as explained *supra*, HUD has not determined that Houston was in violation but taken no action.  *See supra* at 17-19.

TLIHIS also asserts that it can avoid the "no adequate remedy" requirement in Section 704 by relying on the language in *Adams* that an agency's adoption of a policy is not barred by the Section 701(a)(2) prohibition against review of an action "committed to agency discretion by law." Pls.' Mem. at 45.  Plaintiff's argument is flawed.  Section 704 and Section 701(a)(2) are independent provisions limiting actions that can be maintained under the APA.  Thus, "even if [TLIHIS] were correct that [HUD's] actions were not wholly discretionary, the Court still lacks authority to address the merits because [TLIHIS] ha[s] an alternative adequate remedy."  *Garcia,* 2014 WL 187386, at

*37.[8]

Accordingly, because maintaining a suit directly against Houston provides an adequate legal remedy, Section 704 precludes TLIHIS from maintaining this action against HUD.

### C. TLIHIS Cannot Obtain Broad, Programmatic Relief under the APA

In addition to the other fatal flaws of Plaintiff's APA claim, the APA also does not provide a basis for what Plaintiff describe as HUD's "prolonged, programmatic failure . . . to enforce federal civil rights obligations against the City of Houston," Compl. ¶ 1. See Defs.' Mem. at 37-39. In its opposition, TLIHIS seeks to rebut this argument by suggesting that it is not asking for broad, programmatic relief, but instead only alleging "a series of actions and inactions by HUD vis-à-vis Houston." Pls.' Opp. at 43 (citing *N.A.A.C.P.*, 817 F.2d at 154-55).

TLIHIS's argument has no merit. First, the allegations in its complaint belie the assertion that Plaintiff is challenging a series of discrete actions taken by HUD. Although the complaint makes reference to a few particular actions such as HUD's request to Houston to amend its 2010 analysis of impediments to fair housing choice, Compl. ¶ 49, and the VCA resolving the 2017 Title VI (*id.* ¶¶ 96-100), the claims in the "Cause of Action" section of the complaint are sweeping, vague claims that allege failures by HUD over many years. *See, e.g.,* Compl. ¶¶ 135, 136a. & b., 138.

Second, as explained *supra* at 15, the Supreme Court's subsequent holding in *SUWA*, 542 U.S. 62-64, casts doubt on the viability of the First Circuit's holding in *N.A.A.C.P.* *SUWA* held that the APA precludes "broad programmatic attack" and instead only allows review of a claim that "an agency failed to take *discrete* agency action that it *is required to take*." *Id.* at 64. In determining

---

[8] In its opposition, TLIHIS attempts to suggest that the D.C. Circuit's subsequent decision in *Cook* confirmed that the existence of an alternative remedy does not bar an APA claim for an agency's abdication of its mandatory statutory obligations. Pls.' Opp. at 45. Plaintiff's reliance on *Cook* is erroneous because, unlike this case, there was no suggestion that the plaintiff had an alternative remedy. Instead, the only issue was whether, based on the particular language of the statute at issue, the FDA had discretion not to take certain action. *See supra* at 14 n.5.

whether the action that plaintiff seeks to compel is an action that the agency "is required to take," the Court found that statutes setting forth broad objectives such as those set forth in Section 3608(e)(5) are insufficient to create a legal obligation to take a particular action. *Id.* If the language of Section 3608(e)(5) is insufficient to set forth a standard for evaluating a particular enforcement decision, it is difficult to understand how Section 3605(e)(5) can be a sufficient standard for reviewing a series of such enforcement decisions.

In short, no matter how TLIHIS tries to frame its claim, it cannot be maintained under the APA.

## CONCLUSION

For the above reasons, and the reasons stated in Defendants' motion to dismiss, this Court should dismiss TLIHIS's complaint for lack of jurisdiction, or in the alternative, failure to state a claim.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

s/Marcia K. Sowles
MARCIA K. SOWLES
DC Bar No. 369455
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7114
Washington, D.C.  20530
Tel.: (202) 514- 4960
Fax: (202) 616- 8470
E-mail:  marcia.sowles@usdoj.gov

Attorneys for Defendants